Electronically Filed
4/16/2020 3:00 PM
Penny Clarkston, Smith County District Clerk
Reviewed By: Gina McClung

CAUSE NO. 20-0833-C _____

| | | |
|---|---|---|
| SULTAN HAJER DBA | § | IN THE DISTRICT COURT |
| RUG OUTLET | § | |
| | § | |
| | § | _____ JUDICIAL DISTRICT |
| V. | § | |
| | § | |
| OHIO SECURITY INSURANCE COMPANY | § | SMITH COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, SULTAN HAJER DBA RUG OUTLET, and files this Original Petition against OHIO SECURITY INSURANCE COMPANY, a Liberty Mutual Company, ("Liberty") and in support thereof, would show as follows:

## I.
## DISCOVERY CONTROL PLAN LEVEL

Plaintiff intends for discovery to be conducted under Level 3 of Rule 190 of the Texas Rules of Civil Procedure. This case involves complex issues and will require extensive discovery. Therefore, Plaintiff will ask the Court to order that discovery be conducted in accordance with a discovery control plan tailored to the particular circumstances of this suit.

## II.
## PARTIES AND SERVICE

Plaintiff is doing business in Smith County, Texas.

Liberty is in the business of insurance in the State of Texas. The insurance business done by Liberty in Texas includes, but is not limited to, the following:

- The making and issuing of contracts of insurance with the Plaintiff;

- The taking or receiving of application for insurance, including the Plaintiff's application for insurance;

1

- The receiving or collection of premiums, commissions, membership fees, assessments, dues or other consideration for any insurance or any part thereof, including any such consideration or payments from the Plaintiff; and

- The issuance or delivery of contracts of insurance to residents of this state or a person authorized to do business in this state, including the Plaintiff.

Defendant **Ohio Security Insurance Company** can be served at through its registered agent at the following address: Corporation Service Company at 211 East 7th Street, Suite 620, Austin, Texas 78701-3218. **Service is requested at this time**.

## III.
## JURISDICTION AND VENUE

Venue is appropriate in Smith County, Texas because all or part of the conduct giving rise to the causes of action were committed in Smith County, Texas and Plaintiff and Property which is the subject of this suit are located in Smith County, Texas. Accordingly, venue is proper pursuant to Texas Civil Practice & Remedies Code §15.002.

## IV.
## BACKGROUND FACTS

Plaintiff is the owner of an Insurance Policy (hereinafter referred to as "the Policy"). Plaintiff owns the insured property, which is located at 2006 W. Southwest Loop 323, Tyler, Texas 75701 (hereinafter referred to as "the Property"). Liberty sold the Policy insuring the Property to Plaintiff.

During the terms of said Policy, Plaintiff has sustained and will sustain covered losses during the Covid-19 outbreak and subsequent Smith County and State of Texas Orders, attached hereto as Exhibit A, and Plaintiff reported same to Liberty pursuant to the terms of the Policy. Plaintiff asked that Liberty cover the cost for business interruption to the Property pursuant to the Policy. Liberty assigned John Pemberton to adjust the claim and investigate the loss related to business interruption. The claim has been wrongfully denied. To date, Liberty has

mishandled Plaintiff's claim and caused and will continue to cause Plaintiff further and additional damages.

Liberty made material misrepresentations about Policy provisions, coverage and the law in Texas applying thereto. Liberty and its agents have kept and have in their possession a claim file which details the Plaintiff's claim and its investigation, adjustment and subsequent denial of the claim.

Liberty wrongfully denied Plaintiff's claim for business interruption even though the Policy provides coverage for losses such as those suffered by Plaintiff. Furthermore, by information and belief, Liberty engaged its agents to misrepresent Policy provisions and coverage. To date, Liberty continues to deny the payment for Plaintiff's loss of business.

## V.
## CAUSES OF ACTION

### A.    BREACH OF CONTRACT

Plaintiff re-alleges the foregoing paragraphs. Liberty and its agents' conduct constitutes a breach of the insurance contract between it and Plaintiff. Liberty's failure and/or refusal, as described above, to pay Plaintiff adequate compensation as it is obligated to do under the terms of the Policy in question, and under the laws of the State of Texas, constitutes a breach of the insurance contract with Plaintiff.

Liberty failed to perform its contractual duty to adequately compensate Plaintiff under the terms of the Policy. Specifically, Liberty wrongfully denied coverage for Civil Authority and loss of Business Income and refused to offer the full proceeds of the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover Plaintiff's business loss, and all conditions precedent to recovery under the Policy have been carried out and accomplished by Plaintiff. Liberty's conduct constitutes a breach of the insurance contract between it and Plaintiff.

## B.  NONCOMPLIANCE WITH TEXAS INSURANCE CODE

### 1.  UNFAIR SETTLEMENT PRACTICES

Plaintiff re-alleges the foregoing paragraphs. Texas law is clear that insurance companies and anyone engaged in the business of insurance by investigating and adjusting a claim must conduct a reasonable, full and fair claim investigation. Liberty violated Chapter 541 of the Texas Insurance Code, in one or more of the following particulars:

### § 541.061.  Misrepresentation of Insurance Policy.

- Making an untrue statement of material fact;
- Failing to state a material fact necessary to make other statements made not misleading;
- Making a misleading statement; and
- Failing to disclose a material matter of law.

### 2.  THE PROMPT PAYMENT OF CLAIMS

Plaintiff re-alleges the foregoing paragraphs. Liberty's conduct constitutes and will continue to constitute multiple violations of the Texas Insurance Code, Prompt Payment of Claims. All violations made under this article are made actionable by TEX. INS. CODE §542.060.

Liberty failed and will fail to timely pay Plaintiff's claim, and for all of the covered losses due to its wrongful denial of the policy benefits.  TEX. INS. CODE §542.057.

Liberty failed and will fail to meet its obligations under the Texas Insurance Code regarding payment of claims without delay due to its wrongful denial. Its conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.058.

Because of Liberty's wrongful acts and omissions, Plaintiff was forced to retain the professional services of the attorney and law firm who is representing it with respect to these causes of action.

## C.   BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

Plaintiff re-alleges the foregoing paragraphs. Liberty's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to the insureds pursuant to insurance contracts.

From and after the time Plaintiff's loss was presented to Liberty, its liability to pay the full claim in accordance with the terms of the Policy was reasonably clear. However, it has refused to pay Plaintiff in full and wrongfully denied the claim, despite there being no basis upon which a reasonable insurance company would have relied to deny the full payment. Liberty's conduct constitutes a breach of the common law duty of good faith and fair dealing.

Further, Liberty's failure, as described above, to adequately and reasonably investigate and evaluate Plaintiff's claims, although, at that time, it knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

## VI.
## KNOWLEDGE

Each of the acts described above, together and singularly, was done "knowingly" by Defendant as that term is used in the Texas Insurance Code and was a producing cause of Plaintiff's damages described herein.

## VII.
## DAMAGES

Plaintiff would show that all of the aforementioned acts, taken together or singularly, constitute the proximate and producing causes of the damages sustained by Plaintiff.

For breach of contract, Plaintiff is entitled to regain the benefit of the bargain, which is the amount of the claim, together with attorney's fees.

For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the Policy but for the wrongful denial, court costs, consequential damages not covered by Plaintiff's Policy and attorney's fees.  For knowing conduct of the acts described above, Plaintiff asks for three times the actual damages. TEX. INS. CODE §541.152.

For noncompliance with the Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of the claim, as well as eighteen (18) percent interest per annum on the amount of such claim as damages, together with attorney's fees. TEX. INS. CODE §542.060.

For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, and exemplary damages.

For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the attorney whose name is subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorney in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

### VIII.

In addition, as to any exclusion, condition, or defense pled by Defendant, Plaintiff would show that:

The clear and unambiguous language of the policy provides coverage for business interruption and other losses to the Property caused by losses made the basis of Plaintiff's claims;

In the alternative, any other construction of the language of the policy is void as against public policy;

Any other construction and its use by the Defendant violate the Texas Insurance Code section 541 et. seq. and is void as against public policy;

Any other construction is otherwise void as against public policy, illegal, and violates state law and administrative rule and regulation.

In the alternative, should the Court find any ambiguity in the policy, the rules of construction of such policies mandate the construction and interpretation urged by Plaintiff;

In the alternative, Defendant is judicially, administratively, or equitably estopped from denying Plaintiff's construction of the policy coverage at issue;

In the alternative, to the extent that the wording of such policy does not reflect the true intent of all parties thereto, Plaintiff pleads the doctrine of mutual mistake requiring reformation.

## IX.
## REQUEST FOR DISCLOSURES

Pursuant to the Texas Rules of Civil Procedure 194, Plaintiff requests that Defendant provide the information required in a Request for Disclosure.

## X.
## FIRST REQUEST FOR PRODUCTION TO LIBERTY

1) Produce the non-privileged portion of Liberty's complete claim files for Plaintiff's Property relating to or arising out of any damages caused by the losses determined by Defendant's expert and Plaintiff's for which Liberty opened claims under the Policy.

2) Produce all emails and other forms of communication between Liberty, its agents, adjusters, employees, or representatives and the agent and adjuster, and/or their agents, adjusters, representatives or employees relating to, mentioning, concerning or evidencing the Plaintiffs' Policy and/or Properties which are the subject of this suit.

## XI.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendant be cited to appear and answer herein; that, on final hearing, Plaintiff have judgment against Defendant for an amount, deemed to be just and fair by the jury, which will be a sum within the jurisdictional limits of this Court.   FOR THE COURT:  Plaintiff is forced to state a range amount of damages sought although Plaintiff believes that the amount of damages is solely for the jury to determine.  However, because Plaintiff must state a range of damages, Plaintiff pleads that the damages will be less than $100,000. Plaintiff further pleads for costs of suit; for interest on the judgment; for pre-judgment interest; and, for such other and further relief, in law or in equity, either general or special, including the non-monetary relief of declaratory judgment against Defendant, to which Plaintiff may be justly entitled.

Respectfully submitted,

THE LOYD LAW FIRM, P.L.L.C.
12703 Spectrum Drive, Suite 201
San Antonio, Texas 78249
Telephone:   (210) 775-1424
Facsimile:    (210) 775-1410
Electronic Mail:  shannon@theloydlawfirm.com

BY:
        SHANNON E. LOYD
        State Bar No. 24045706

ATTORNEY FOR PLAINTIFF

**PLAINTIFF REQUESTS A TRIAL BY JURY**

# Exhibit A



G O V E R N O R   G R E G   A B B O T T

March 31, 2020

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
___2 PM___ O'CLOCK

MAR 3 1 2020

Secretary of State

The Honorable Ruth R. Hughs
Secretary of State
State Capitol Room 1E.8
Austin, Texas  78701

Dear Secretary Hughs:

Pursuant to his powers as Governor of the State of Texas, Greg Abbott has issued the following:

Executive Order No. GA-14 relating to statewide continuity of essential services
and activities during the COVID-19 disaster.

The original executive order is attached to this letter of transmittal.

Respectfully submitted,

Gregory S. Davidson
Executive Clerk to the Governor
GSD/gsd

Attachment

# 𝕰𝖝𝖊𝖈𝖚𝖙𝖎𝖛𝖊 𝕺𝖗𝖉𝖊𝖗

### BY THE
### GOVERNOR OF THE STATE OF TEXAS

**Executive Department**
**Austin, Texas**
**March 31, 2020**

### EXECUTIVE ORDER
### GA 14

*Relating to statewide continuity of essential services and activities*
*during the COVID-19 disaster.*

―――――――――――

WHEREAS, I, Greg Abbott, Governor of Texas, issued a disaster proclamation on March 13, 2020, certifying under Section 418.014 of the Texas Government Code that the novel coronavirus (COVID-19) poses an imminent threat of disaster for all counties in the State of Texas; and

WHEREAS, the Commissioner of the Texas Department of State Health Services (DSHS), Dr. John Hellerstedt, has determined that COVID-19 represents a public health disaster within the meaning of Chapter 81 of the Texas Health and Safety Code; and

WHEREAS, I have issued numerous executive orders and suspensions of Texas laws in response to the COVID-19 disaster, aimed at protecting the health and safety of Texans and ensuring an effective response to this disaster; and

WHEREAS, I issued Executive Order GA-08 on March 19, 2020, mandating certain obligations for Texans in accordance with the President's Coronavirus Guidelines for America, as promulgated by President Donald J. Trump and the Centers for Disease Control and Prevention (CDC) on March 16, 2020, which called upon Americans to take actions to slow the spread of COVID-19 for 15 days; and

WHEREAS, Executive Order GA-08 is subject to expiration at 11:59 p.m. on April 3, 2020, absent further action by the governor; and

WHEREAS, on March 29, 2020, to avoid scenarios that could lead to hundreds of thousands of deaths, the President announced that, based on advice from Dr. Anthony Fauci and Dr. Deborah Birx, the restrictive social-distancing Guidelines should extend through April 30, 2020; and

WHEREAS, DSHS Commissioner Dr. Hellerstedt and White House Coronavirus Response Coordinator Dr. Birx say that the spread of COVID-19 can be reduced by minimizing social gatherings; and

*Governor Greg Abbott*
March 31, 2020

*Executive Order GA-14*
Page 2

WHEREAS, all government entities and businesses should be allowed to continue providing essential services during the COVID-19 disaster, and all critical infrastructure should be allowed to remain operational; and

WHEREAS, the "governor is responsible for meeting ... the dangers to the state and people presented by disasters" under Section 418.011 of the Texas Government Code, and the legislature has given the governor broad authority to fulfill that responsibility; and

WHEREAS, under Section 418.012, the "governor may issue executive orders ... hav[ing] the force and effect of law;" and

WHEREAS, under Section 418.016(a), the "governor may suspend the provisions of any regulatory statute prescribing the procedures for conduct of state business ... if strict compliance with the provisions ... would in any way prevent, hinder, or delay necessary action in coping with a disaster;" and

WHEREAS, under Section 418.017(a), the "governor may use all available resources of state government and of political subdivisions that are reasonably necessary to cope with a disaster;" and

WHEREAS, under Section 418.018(c), the "governor may control ingress and egress to and from a disaster area and the movement of persons and the occupancy of premises in the area;" and

WHEREAS, under Section 418.173, failure to comply with any executive order issued during the COVID-19 disaster is an offense punishable by a fine not to exceed $1,000, confinement in jail for a term not to exceed 180 days, or both fine and confinement.

NOW, THEREFORE, I, Greg Abbott, Governor of Texas, by virtue of the power and authority vested in me by the Constitution and laws of the State of Texas, do hereby order the following on a statewide basis effective 12:01 a.m. on April 2, 2020, and continuing through April 30, 2020, subject to extension based on the status of COVID-19 in Texas and the recommendations of the CDC and the White House Coronavirus Task Force:

In accordance with guidance from DSHS Commissioner Dr. Hellerstedt, and to achieve the goals established by the President to reduce the spread of COVID-19, every person in Texas shall, except where necessary to provide or obtain essential services, minimize social gatherings and minimize in-person contact with people who are not in the same household.

"Essential services" shall consist of everything listed by the U.S. Department of Homeland Security in its Guidance on the Essential Critical Infrastructure Workforce, Version 2.0, plus religious services conducted in churches, congregations, and houses of worship. Other essential services may be added to this list with the approval of the Texas Division of Emergency Management (TDEM). TDEM shall maintain an online list of

home unless they are essential services that cannot be provided through remote telework. If religious services cannot be conducted from home or through remote services, they should be conducted consistent with the Guidelines from the President and the CDC by practicing good hygiene, environmental cleanliness, and sanitation, and by implementing social distancing to prevent the spread of COVID-19.

In accordance with the Guidelines from the President and the CDC, people shall avoid eating or drinking at bars, restaurants, and food courts, or visiting gyms, massage establishments, tattoo studios, piercing studios, or cosmetology salons; provided, however, that the use of drive-thru, pickup, or delivery options for food and drinks is allowed and highly encouraged throughout the limited duration of this executive order.

This executive order does not prohibit people from accessing essential services or engaging in essential daily activities, such as going to the grocery store or gas station, providing or obtaining other essential services, visiting parks, hunting or fishing, or engaging in physical activity like jogging or bicycling, so long as the necessary precautions are maintained to reduce the transmission of COVID-19 and to minimize in-person contact with people who are not in the same household.

In accordance with the Guidelines from the President and the CDC, people shall not visit nursing homes, state supported living centers, assisted living facilities, or long-term care facilities unless to provide critical assistance as determined through guidance from the Texas Health and Human Services Commission.

In accordance with the Guidelines from the President and the CDC, schools shall remain temporarily closed to in-person classroom attendance and shall not recommence before May 4, 2020.

This executive order shall supersede any conflicting order issued by local officials in response to the COVID-19 disaster, but only to the extent that such a local order restricts essential services allowed by this executive order or allows gatherings prohibited by this executive order. I hereby suspend Sections 418.1015(b) and 418.108 of the Texas Government Code, Chapter 81, Subchapter E of the Texas Health and Safety Code, and any other relevant statutes, to the extent necessary to ensure that local officials do not impose restrictions inconsistent with this executive order, provided that local officials may enforce this executive order as well as local restrictions that are consistent with this executive order.

This executive order supersedes Executive Order GA-08, but not Executive Orders GA-09, GA-10, GA-11, GA-12, or GA-13, and shall remain in effect and in full force until April 30, 2020, unless it is modified, amended, rescinded, or superseded by the governor.



Given under my hand this the 31st day of March, 2020.

*Governor Greg Abbott*
March 31, 2020

*Executive Order GA-14*
Page 4


ATTESTED BY:

RUTH R. HUGHS
Secretary of State



FILED
KAREN PHILLIPS
COUNTY CLERK

20 APR -7 PM 4: 08

SMITH COUNTY, TEXAS

BY _Delur Colebour_
DEPUTY

## AMENDED ORDER OF COUNTY JUDGE NATHANIEL MORAN'S PUBLIC HEALTH EMERGENCY LOCAL ORDER ISSUED MARCH 27, 2020 FOR SMITH COUNTY, TEXAS

WHEREAS, pursuant to Texas Government Code Section 418.108, Smith County Judge Nathaniel Moran issued a Declaration of Local Disaster for Public Health Emergency on March 16, 2020, due to a novel coronavirus now designated SARS-CoV2 which causes the disease COVID-19; and

WHEREAS, on Tuesday, March 17, 2020 the Smith County Commissioners Court ratified and consented to that Order, authorizing the County Judge to take all necessary and extraordinary measures to mitigate the effects of the local public health emergency, and

WHEREAS, the on-going evaluation of circumstances related to the virus and the updated recommendations of the Centers for Disease Control and Prevention (CDC), the Texas Department of State Health Services (DSHS), and local public health authority warrant the March 16, 2020 Order of County Judge Nathaniel Moran be amended; and

WHEREAS, on March 16, 2020, President Trump acknowledged the gravity of the COVID-19 pandemic, releasing strict new guidelines to limit people's interactions, including that Americans should avoid groups of more than 10 people.

WHEREAS, on March 31, 2020 Governor Greg Abbott, issued Executive Order GA-14 providing guidance that "Essential services shall consist of everything listed by the U.S. Department of Homeland Security in its Guidance on the Essential Critical Infrastructure Workforce, Version 2.0, plus religious services conducted by churches, congregations, and houses of worship."

WHEREAS, Governor Greg Abbott's Executive Order GA-14 further provides guidance that "providing or obtaining essential services, people and businesses should follow the Guidelines from the President and the CDC by practicing good hygiene, environmental cleanliness, and sanitation, implementing social distancing, and working from home if possible."

WHEREAS, this order in no way conflicts with the guidelines provided in GA-14, nor does it allow gatherings prohibited by GA-14.

NOW THEREFORE, the March 27, 2020, Order of County Judge Nathaniel Moran is hereby AMENDED as follows:

Summary: The virus that causes 2019 Coronavirus Disease (COVID-19) is easily transmitted through person to person contact, especially in group settings, and it is essential that the spread of the virus be slowed to protect the ability of public and private health care providers to handle the influx of new patients and safeguard public health and safety. Because of the risk of the rapid spread

of the virus, and the need to protect the most vulnerable members of the community, this Amended Order requires all individuals anywhere in Smith County to, stay at home – except for certain essential activities and work to provide essential business and government services or perform essential public infrastructure construction, including housing. This Amended Order takes effect at 11:59 p.m. on Friday, April 10, 2020 and will continue through 11:59 p.m. on Thursday, April 30, 2020, unless otherwise extended or terminated by further order of the County Judge of Smith County.

### UNDER THE AUTHORITY OF TEXAS GOVERNMENT CODE SECTION 418.108, SMITH COUNTY JUDGE NATHANIEL MORAN ORDERS:

1. That this Amended Order under Declaration of Local State of Disaster Due to Public Health Emergency shall be given prompt and general publicity and filed with the County Clerk. This Amended Order incorporates all provisions provided in the previous Disaster Order issued on March 16, 2020 and ratified by the Smith County Commissioners Court on March 17, 2020.

2. That, regardless of any other provision of this Amended Order, if a person residing in Smith County is being tested or has tested positive for COVID-19 ("COVID-19 Patient") or is a Person Under Investigation ("PUI"), that person plus all other individuals living at the same address[1] of a COVID-19 Patient or PUI are ordered to isolate at home until testing shows the COVID-19 Patient or PUI has either (i) tested negative (ii) is released back to work by a medical doctor, or (iii) is no longer an active PUI according to the Local Health Authority, whichever occurs first. Individuals identified in this paragraph shall not go to work, school, or any other community function until the COVID-19 Patient or PUI has either (i) tested negative (ii) is released back to work by a medical doctor, or (iii) is no longer an active PUI according to the Local Health Authority, whichever occurs first. Nothing in this paragraph shall prevent any individual from seeking health care services or treatment for themselves or assisting any family member.

   a. COVID-19 Patient includes an individual who (i) has tested positive or (ii) has been tested for COVID-19 and is still awaiting a result.

   b. Person Under Investigation ("PUI") is defined as an individual who the local public health authority has reason to believe is or may be infected in accordance with Texas Health and Safety Code, Chapter 81, Subchapters D, E, & G, and has been informed that they are a "Person Under Investigation."

   c. This provision of this Amended Order in no way impedes the local public health authority or state public health authority from issuing or seeking any Control Measure Order under Texas Health and Safety Code, Chapter 81, Subchapter E.

3. That all individuals currently living in Smith County, Texas, (the "County") are ordered to stay in their place of residence. To the extent individuals are using shared or outdoor spaces, they must at all times as reasonably possible maintain physical distancing of at least six feet from any other person when outside their residence. All persons may leave their residences only for Essential Activities, Essential Government Functions, or to operate Essential Businesses or Locked Businesses, as defined below. Individuals experiencing homelessness are exempt from this Section, but are strongly urged to obtain shelter, and entities are strongly urged to make such shelter available as soon as possible and to the maximum extent

---

[1] For apartment complexes or other multi-family units, the term "address" is intended only to mean those living in the same apartment number or housing unit.

practicable, and to utilize Social Distancing Requirements in their operations. Notwithstanding the foregoing, nothing in this order shall restrict the rights of any citizen of the County provided for by the Constitution of the United States or of the State of Texas.

4. That all businesses[2] with a facility in the County, except Essential Businesses or Locked Businesses as defined below, are required to cease all activities at facilities located within the County except Minimum Basic Operations, as defined below. For clarity, all businesses (regardless of whether they are an Essential Business or Locked Business or otherwise) may also continue operations consisting exclusively of employees or contractors performing activities at their own residences (i.e., working from home, teleworking, or telecommuting). All Essential Businesses are encouraged to determine essential staff necessary to operate, and send all non-essential staff to their respective homes. To the greatest extent feasible, Essential Businesses and Locked Businesses shall comply with Social Distancing Requirements as defined below, including but not limited to when any customers are standing in line.

5. All public and private gatherings of any number of people occurring outside a household or living unit are prohibited, except for the limited purposes as expressly permitted in below. Nothing in this Amended Order prohibits the gathering of members of a household or living unit.

6. All travel, except Essential Travel and Essential Activities as defined below is prohibited. People must use public transit only for purposes of performing Essential Activities or to travel to and from work to operate Essential Businesses or Locked Businesses, or maintain Essential Governmental Functions. People riding on public transit must comply with Social Distancing Requirements as defined below, to the greatest extent feasible. This Amended Order allows travel into or out of the County to perform Essential Activities, operate Essential Businesses or Locked Businesses, or maintain Essential Governmental Functions.

7. Definitions and Exemptions.

   a. **Essential Activities.** For purposes of this Amended Order, individuals may leave their residence only to perform any of the following "Essential Activities:"
      i. To engage in activities or perform tasks essential to their health and safety, or to the health and safety of their family or household members (including, but not limited to, pets), such as, by way of example only and without limitation, obtaining medical supplies or medication, visiting a health care professional, or obtaining supplies they need to work from home;
      ii. To obtain necessary services or supplies for themselves and their family or household members or to deliver those services or supplies to others, such as, by way of example only and without limitation food, dry goods, fresh fruits and vegetables, pet supply, fresh meats, fish, and poultry, and any other household consumer products and products necessary to maintain the safety, sanitation, and essential operation of residences;
      iii. To engage in outdoor activity, provided the individuals comply with Social Distancing Requirements as defined below, such as, by way of example and without limitation, exercising, walking, hiking, running, or riding a bicycle;
      iv. To perform work providing essential products and services at an Essential Business or Locked Business or to otherwise carry out activities performed

---

[2]For the purposes of this Order, covered businesses include any for-profit, or non-profit, regardless of the nature of the service the function they perform, or its corporate or entity structure.

by "Essential Critical Infrastructure Workers"[3] in support of Critical Infrastructure or as otherwise specifically permitted in this Amended Order, including Minimum Basic Operations; and

v.  To care for a family member or pet in another household.

**NOTWITHSTANDING THE FOREGOING PERMITTED ACTIVITIES, PEOPLE AT HIGH RISK OF SEVERE ILLNESS FROM COVID-19 AND PEOPLE WHO ARE SICK ARE URGED TO STAY IN THEIR RESIDENCE TO THE EXTENT POSSIBLE EXCEPT AS NECESSARY TO SEEK MEDICAL CARE.**

b.  **Healthcare Operations.**  For purposes of this Amended Order, individuals may leave their residence to work for or obtain services at any "Healthcare Operations." The term "Healthcare Operations" includes the activities of hospitals, clinics, private practice physicians, dentists, chiropractors, pharmacies, pharmaceutical companies, and biotechnology companies, other healthcare providers, healthcare facilities, healthcare suppliers, home healthcare services providers, mental health providers, or any related and/or ancillary healthcare services. "Healthcare Operations" also includes veterinary care and all healthcare services provided to animals. This exemption shall be construed broadly to avoid any impacts to the delivery of healthcare, broadly defined. "Healthcare Operations" does not include fitness and exercise gyms and similar facilities.

c.  **Critical Infrastructure.**  For purposes of this Amended Order, individuals may leave their residence to provide any goods or services or perform any work necessary to the operations and maintenance of "Critical Infrastructure," as more particularly identified by the U.S. Department of Homeland Security, Cybersecurity & Infrastructure Security Agency (CIS) as the following 16 critical infrastructure sectors: (1) Chemical Sector, (2) Commercial Facilities Sector (3) Communications Sector, (4) Critical manufacturing Sector (5) Dams Sector (6) Defense Industrial base Sector (7) Emergency Services Sector (8) Energy Sector (9) Financial Services Sector (10) Food and Agriculture Sector (11) Government Facilities Sector (12) Healthcare and Public Health Sector (13) Information Technology Sector (14) Nuclear Reactors, Materials, and Waste Sector, (15) Transportation Systems Sector and (16) Water and Wastewater Systems Sector, provided that they carry out those services or they work in compliance with Social Distancing Requirements as defined below, to the extent possible.  See https://www.cisa.gov/identifying-critical-infrastructure-during-covid-19.

d.  **Emergency Personnel, Law Enforcement, and the Judiciary.**  Nothing in this Amended Order shall prohibit the activities of any first responder, emergency management personnel, emergency dispatcher, detention officer, court personnel, or law enforcement personnel.

e.  **Essential Governmental Functions.**  Nothing in this Amended Order shall prohibit any individual from performing or accessing "Essential Governmental Functions," as determined by the governmental entity performing those functions. Each governmental entity shall identify and designate appropriate employees or

---

[3] For identification of workers who fit within the definition of "Essential Critical Infrastructure Workers," see the guidance provided by the U.S. Department of Homeland Security, Cybersecurity & Infrastructure Security Agency (CIS) https://www.cisa.gov/sites/default/files/publications/CISA_Guidance_on_the_Essential_Critical_Infrastructure_Workforce_Version_2.0_Updated.pdf which is incorporated by reference.

contractors to continue providing and carrying out any Essential Governmental Functions. All Essential Governmental Functions shall be performed in compliance with Social Distancing Requirements as defined in this Amended Order, to the extent possible.

f.  **Schools.**  Nothing in this Amended Order shall restrict the school-related activities of any college, university, public, private, or charter school, or any homeschool association, including without limitation the delivery or pick-up of meals, supplies, or homework assignments.

g.  **Essential Businesses.**  For the purposes of this Amended Order, the term "Essential Businesses" means any business providing "Essential services" as that term is defined or permitted by Governor Abbott's GA 14 Order (in its present form or as otherwise amended by further Order of the Governor), or as otherwise approved by the Texas Department of Emergency Management.[4]

h.  **Locked Businesses.**  For the purposes of this Amended Order, the term "Locked Businesses" means any business that operates in a manner consistent with Governor Abbott's GA 14 Order to "minimize social gatherings and minimize in-person contact with people who are not in the same household," to wit, any business that: (i) operates with ten (10) or fewer employees, contractors, or subcontractors at any one time in a single physical facility; (ii) fully restricts public access to the inside of their business premises during the term of this Amended Order; and (iii) at all times, enforces Social Distancing Requirements among its employees, contractors, or subcontractors while they are performing services for the business at the business premises.

i.  **Minimum Basic Operations.**  For the purposes of this Amended Order, "Minimum Basic Operations" include the following, provided that employees comply with Social Distancing Requirements as defined below, to the extent possible, while carrying out such operations: The minimum necessary activities to maintain the value of the business' inventory, ensure security, process payroll, and employee benefits or for related functions; and the minimum necessary activities to facilitate employees of the business being able to continue to work remotely from their residences.

j.  **Essential Travel.**  For the purposes of this Order, the term "Essential Travel" includes travel for any of the following purposes:

   i.  Any travel related to the provision of or access to Essential Activities, Essential Governmental Functions, Essential Businesses, or Minimum Basic Operations;
   ii.  Travel to care for elderly, minors, dependents, persons with disabilities, or other vulnerable persons;
   iii.  Travel to or from educational institutions for purposes of receiving materials for distance learning, for receiving meals, and any other related services:
   iv.  Travel to return to a place of residence from outside the jurisdiction;
   v.  Travel required by law enforcement or court order; or

---

[4] The definition of "Essential Services" under this Amended Order also expressly includes all of those services rendered by those "Essential Businesses" specifically identified and enumerated in Paragraph 7(g) of Judge Moran's Amended Order dated March 27, 2020, which were and remain consistent with Governor Abbott's GA 14 Order.

vi. Travel required for non-residents to return to their place of residence[5] outside the County. Individuals are strongly encouraged to verify that their transportation out of the County remains available and functional prior to commencing such travel. Individuals engaged in any Essential Travel must comply with all Social Distancing Requirements as defined below.

k. **Social Distancing Requirements.** For purposes of this Amended Order, the term "Social Distancing Requirements" means maintaining at least six-foot physical distancing from other individuals, washing hands with soap and water for at least twenty seconds as frequently as possible or using an alcohol based hand sanitizer, covering coughs or sneezes (into the sleeve or elbow, not hands), regularly cleaning high-touch surfaces, and not shaking hands.

8. Non-essential businesses shall shut down except for maintaining Minimum Basic Operations as defined herein. Essential Businesses and Locked Businesses exempted from shut-down are encouraged to determine staff who are essential to operations and to send non-essential staff home.

9. In order to ensure compliance with the recommendations made in Governor Greg Abbot's Executive Order, GA-14, the following guidelines shall be established on all essential retail businesses, other than grocery stores:

   a. Steps must be taken to ensure that any customer waiting in a queue, line, row, or other sequence of persons, either inside or outside of the physical retail store location, does not violate the social distancing guidelines set forth by the CDC; and

   b. Steps must be taken to limit access to the inside of any facility open to the public to no more than 100 persons or half of the permitted occupancy, including employees, whichever is less.

10. When people need to leave their places of residence, whether to obtain or perform vital services or to otherwise facilitate authorized activities necessary for continuity of social and commercial life, they should at all times as reasonably as possible comply with Social Distancing Requirements as defined in this Amended Order.

11. Failure to comply with any of the provisions of this Amended Order constitutes an imminent threat to public health. The penalty for violating this Amended Order, in accordance with Texas Government Code, Section 418.173, shall be a fine of no more than One Thousand Dollars ($1,000.00), confinement in the county jail for a term up to 180 days, or both such fine and confinement. Each day a violation occurs is a separate and distinct violation. This Amended Order also authorizes a licensed peace officers with local county or state jurisdiction to enforce the provisions of this Amended Order.

12. All provisions of this Amended Order should be interpreted to effectuate its intent. If any subsection, sentence, clause, phrase, or word of this Amended Order or any application of it to any person, structure, gathering, or circumstance is held to be invalid or unconstitutional by a decision of a court of competent jurisdiction, then such decision will not affect the validity of the remaining portions or applications of this Amended Order.

---

[5] For purposes of this Amended Order, the term "residence" includes single-family or multi-family residential structures, duplexes, hotels, motels, shared rental units, and similar facilities.

**13.** This Order remains in effect from 11:59 p.m., Friday, April 10, 2020 until 11:59 p.m., Thursday, April 30, 2020, unless otherwise terminated or extended by order of the County Judge of Smith County, Texas.

Nothing in this Order is intended to restrict "essential services" as such term is defined in Governor Abbott's Executive Order GA-14 (Order GA-14), nor is it intended to allow gatherings prohibited by Order GA-14. To the extent that the Texas Division of Emergency Management approves additions to "essential services", those additions will be treated as an Essential Business in Smith County. Nothing herein is intended to impose restrictions inconsistent with Order GA-14 or any other order issued by the Governor currently in effect relating to COVID-19 (a COVID Order). To the extent that this Executive Order conflicts with a COVID Order, the provisions in a COVID Order prevail.

**This Order is adopted to be effective as of April 10, 2020 at 11:59 p.m.**

**NATHANIEL MORAN**
**SMITH COUNTY JUDGE**

Penny Clarkston
Smith County District Clerk
100 N. Broadway, Room 204
Tyler, Texas 75702

20-0833-C

Ohio Security Insurance Company
Registered Agent Corporation Service
Company
211 East 7th Street Suite 620
Austin TX 78701-3218

150 0000 5139 9494



US POSTAGE >> PITNEY BOWES

ZIP 75702
02 4W
0000356619
$ 008.20°
APR 21 2020