IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| SULTAN HAJER DBA RUG OUTLET § § *Plaintiff*, § § V. § § OHIO SECURITY INSURANCE COMPANY § § *Defendant*. § | | Civil Action No. 6:20-cv-283-JCB Jury |

**PLAINTIFF'S UNOPPOSED FIRST AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, SULTAN HAJER DBA RUG OUTLET, and files this Unopposed First Amended Complaint against OHIO SECURITY INSURANCE COMPANY, a Liberty Mutual Company, ("Liberty Mutual") and in support thereof, would show as follows:

**I.**

1. Liberty Mutual is unopposed to Plaintiff's First Amended Complaint.

**II.**
**DISCOVERY CONTROL PLAN LEVEL**

2. Discovery will be conducted according to the Federal Rules of Civil Procedure, local rules, and any scheduling order of the Court.

**III.**
**PARTIES AND SERVICE**

3. Plaintiff is doing business in Smith County, Texas.

Liberty Mutual is in the business of insurance in the State of Texas. The insurance business done by Liberty Mutual in Texas includes, but is not limited to, the following:

- The making and issuing of contracts of insurance with the Plaintiff;

- The taking or receiving of application for insurance, including the Plaintiff's application for insurance;

- The receiving or collection of premiums, commissions, membership fees, assessments, dues or other consideration for any insurance or any part thereof, including any such consideration or payments from the Plaintiff; and

- The issuance or delivery of contracts of insurance to residents of this state or a person authorized to do business in this state, including the Plaintiff.

4. Defendant **Ohio Security Insurance Company** has been served and has made an appearance.

## IV.
## JURISDICTION AND VENUE

5. Venue is appropriate in Smith County, Texas because all or part of the conduct giving rise to the causes of action were committed in Smith County, Texas and Plaintiff and Property which is the subject of this suit are located in Smith County, Texas. Accordingly, venue is proper pursuant to Texas Civil Practice & Remedies Code §15.002.

## V.
## BACKGROUND FACTS

6. Plaintiff is the owner of an Insurance Policy (hereinafter referred to as "the Policy"). Plaintiff owns the insured property, which is located at 2006 W. Southwest Loop 323, Tyler, Texas 75701 (hereinafter referred to as "the Property"). Liberty sold the Policy insuring the Property to Plaintiff.  The Declarations pages for the Policy and the policy provided to Plaintiff is attached hereto as Exhibit A. The Policy is an all-risk policy and has been continuously in full force and effect since inception, providing coverage for property, business personal property, business income, extra expense and additional coverages including Civil Authority.

7.      During the terms of said Policies, Plaintiff has sustained and will sustain covered losses during the Covid-19 outbreak and subsequent Smith County and State of Texas Orders (hereinafter the "Orders"), attached hereto as Exhibits B and C, and Plaintiff reported same to Liberty Mutual pursuant to the terms of the Policy. Plaintiff asked that Liberty Mutual cover the cost for business interruption pursuant to the Policy. Liberty Mutual assigned John Pemberton to adjust the claim and investigate the loss related to business interruption; however, the claim has been wrongfully denied. To date, Liberty Mutual has mishandled Plaintiff's claim and caused and will continue to cause Plaintiff further and additional damages.

8.      The World Health Organization ("WHO") identified the disease caused by the 2019 Novel Coronavirus as "COVID-19" on February 11, 2020. On March 11, WHO characterized COVID-19 as a pandemic. WHO saw "alarming levels of spread and severity, and by the alarming levels of inaction." WHO representatives stated, "[W]e have never before seen a pandemic sparked by a coronavirus. This is the first pandemic caused by a coronavirus. And we have never before seen a pandemic that can be controlled, at the same time." The Center for Disease Control ("CDC") has stated that a "pandemic is a global outbreak of disease. Pandemics happen when a new virus emerges to infect people and can spread between people sustainably. Because there is little to no pre-existing immunity against the new virus, it spreads worldwide."

9.      Plaintiff is in the retail business. On March 27, 2020, Nathaniel Moran, Smith County Judge, issued an executive order closing all businesses unless "exempted" beginning on March 27th and ending April 10th. *See* Exhibit B. Plaintiff's business was not exempt. *Id.* On March 31, 2020, the State of Texas Governor Greg Abbott signed an executive order closing all "non-essential" businesses beginning April 2nd through April 30th of 2020. *See* Exhibit C. Plaintiff's

business is not considered "essential" by Governor Abbott's order. *Id.* Plaintiff was beginning to lose business income even before March 27, 2020 because of peoples' fear of Covid-19.

10.     The described purposes of the Orders are to protect the "health, safety and welfare" of Smith County and Texas residents, and to slow the spread of Covid-19 by "minimizing social gatherings" and "minimize in-person contact." *See* Exhibits B and C. According to the Texas Department of Health and Human Services, Covid-19 has been and continues to be present in Smith County.

11.     Beginning on March 27, 2020, Plaintiff could no longer open and conduct business and began losing business income. Plaintiff submitted its claims to Liberty Mutual, and it denied the claim without conducting an investigation. The pandemic and health care crises has resulted in the Plaintiff suffering a physical loss of the insured Property, and alternatively damage to the insured Property and suspension of its business that are covered under the business Income Loss provisions of the Policy. Alternatively, coverage is available under Civil Authority coverage under the Policy.

**A.     Coverage for Business Income**

12.     Plaintiff's Policy under "Covered Causes of Loss" insures for "direct physical loss" unless the loss is excluded or limited. *See* Exhibit A, pg. 44. Further, Plaintiff's Policy provides coverage for Loss of Business Income and Extra Expense as follows:

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of **or** damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

*Id.* at pg. 49(emphasis added). Plaintiff suffered lost income when the Orders closed the business, and on information and belief Plaintiff will continue to suffer lost income even after the Orders are lifted due to fear of Covid-19. The proliferation of the virus, consumer fear of the virus, and

the stay at home orders have caused Plaintiff physical loss of the property and loss of business income and are not specifically excluded by the Policy. Plaintiff's business has been transformed by external events, not specifically excluded, from a sustainable, revenue generating operation to the unsatisfactory state of closure and now slowed business. The presence of the virus in Smith County alone triggers coverage because it renders the Property unsafe or makes it unusable for its intended purpose.

**B.      Coverage for Civil Authority**

13.     Plaintiff's Policy also provides additional coverage for Civil Authority:

> When a **Covered Cause of Loss** causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
> 
> **(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
> 
> **(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage **or** continuation of the **Covered Cause of Loss** that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

*Id.* at pg. 52 (emphasis added). The Orders are clearly acts of Civil Authority which have caused Plaintiff loss of business income as described above. The Orders, along with their stated purposes, qualify as a Covered Cause of Loss under the Policy, especially given that there is precedent that holds "physical loss" can occur without actual tangible physical damage to a property. The premises not more than one mile from Plaintiff's Property have suffered the same physical loss as Plaintiff has suffered due to the pandemic.

**C.      Liberty Mutual's Wrongful Denial**

14.     Liberty Mutual made no request to Plaintiff for documents or information relating to the claim, and it denied Plaintiff's claim shortly after the claim was presented meaning it could

5

not have done a proper or thorough investigation or have any evidence that any exclusions applied.

15. Liberty Mutual's denial was based, in part, on a lack of "physical damage" to Plaintiff's Property. *See* Exhibit D. But the Policy does not require a loss solely caused by physical "damage" as it also provides coverage for physical "loss." The Policy does not define "physical loss" and that term has been broadly defined in property policies for decades to include losses that are not actual tangible damage to property. At the very least, Plaintiff suffered a physical loss of the covered property as a result of fear and actions taken to limit the impact of the pandemic on the health, safety and welfare of Smith County citizens. Further, Plaintiff clearly suffered physical loss to Covered Property because it was unable to operate. As well, Liberty Mutual's denial of Civil Authority coverage is based on its claim that the coverage is only triggered when "access to the described premises is prohibited when there is **direct physical damage** to other property…" *See* Exhibit D (emphasis added). But that is not the language in the Civil Authority provision. Civil Authority is triggered when a Covered Cause of Loss "causes **damage to property** other than property at the described premises." *See* Exhibit A, pg. 52 (emphasis added). The Policy does not define "damage" in the property coverage section, and "damage" is broadly defined in its common ordinary meaning. Liberty Mutual did, however, define "property damage" in the Liability coverage portion of the Policy as "physical injury to tangible property." *Id.* at pg. 100. It could have, but did not, so define "physical loss" under the Property coverage portion of the Policy.

16. Liberty Mutual relies on the exclusion for "Virus or Bacteria" as a basis for denial, but contrary to its assertion, this is not a pandemic exclusion. *See* Exhibit D. Liberty Mutual ignores the fact that the exclusion states that it applies only where a virus is the fully realized

and actual cause of the loss. It does not state that it applies to a loss caused by the need to prevent against the threat of viral transmission or fear of virus.

17. Liberty Mutual also relies on the "Consequential Loss" exclusion for its denial. *Id.* This exclusion is extremely vague and, if applicable, would never allow for coverage for loss of income due to pandemic or Civil Authority rendering such coverages meaningless. As well, it relies on the Pollution exclusion to deny Plaintiff's claim, but the virus is not a pollutant according to the definition in the Policy. *Id.* As with the virus exclusion, Liberty Mutual would have to prove the virus – were it a pollutant – was present at the Property.

18. The exclusions for "Virus or Bacteria," "Consequential Loss" and "Pollutants" (collectively the "Exclusions") have no application to Plaintiff's claim in light of their plain language. Alternatively, the exclusions are vague and ambiguous and must be construed in the light most favorable to Plaintiff.

19. Liberty Mutual failed to give proper, advance notice and disclosure of the Exclusions and is thus barred from reliance upon them.

20. On information and belief, Liberty Mutual is barred from relying on the Exclusions as a result of regulatory and/or administrative estoppel.

21. Alternatively, the Exclusions as interpreted by Liberty Mutual are unconscionable and/or contrary to public policy and cannot be enforced as written.

22. Liberty Mutual made material misrepresentations about Policy provisions, coverage and the law in Texas applying thereto with regard to Plaintiff's Loss of Business Income and Civil Authority additional coverages.

23. Liberty Mutual considered only its own interests, proceeded only according to its one-sided and self-serving interpretation of the Policy, and attempted to conceal from Plaintiff that Liberty

Mutual made no effort to consider its interests. Liberty Mutual pre-textually looked only for ways to avoid coverage rather than first trying to find coverage.

24. Liberty Mutual wrongfully denied Plaintiff's claims for business interruption even though the Policy provides coverage for losses such as those suffered by Plaintiff. Furthermore, by information and belief, Liberty Mutual engaged its agents to misrepresent Policy provisions and coverage. To date, Liberty Mutual continues to deny the payment for Plaintiff's loss of business.

VI.
**CAUSES OF ACTION**

A.   **BREACH OF CONTRACT**

25. Plaintiff re-alleges the foregoing paragraphs. Liberty Mutual and its agents' conduct constitutes a breach of the insurance contracts between it and Plaintiff. Liberty Mutual's failure and/or refusal, as described above, to pay Plaintiff adequate compensation as it is obligated to do under the terms of the Policy in question pursuant to the additional coverages of Loss of Business Income and Civil Authority, and under the laws of the State of Texas, constitutes a breach of the insurance contracts with Plaintiff.

26. Liberty Mutual failed to perform its contractual duty to adequately compensate Plaintiff under the terms of the Policy pursuant to the additional coverages of Loss of Business Income and Civil Authority. Specifically, Liberty Mutual wrongfully denied coverage and refused to offer the full proceeds of the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover Plaintiff's business loss, and all conditions precedent to recovery under the Policy have been carried out and accomplished by Plaintiff. Liberty Mutual's conduct constitutes a breach of the insurance contracts between it and Plaintiff.

**B.     NONCOMPLIANCE WITH TEXAS INSURANCE CODE**

   **1.     UNFAIR SETTLEMENT PRACTICES**

27.     Plaintiff re-alleges the foregoing paragraphs. Texas law is clear that insurance companies and anyone engaged in the business of insurance by investigating and adjusting a claim must conduct a reasonable, full and fair claim investigation. Liberty Mutual violated Chapter 541 of the Texas Insurance Code, in one or more of the following particulars:

   **§ 541.061.  Misrepresentation of Insurance Policies.**

   - Making an untrue statement of material fact;
   - Failing to state a material fact necessary to make other statements made not misleading;
   - Making a misleading statement; and
   - Failing to disclose a material matter of law.

As alleged above, Liberty Mutual misrepresented to Plaintiff that the Policy required actual physical, tangible damage to its Property in order for it to have coverage for Business Income. In the same letter, Liberty Mutual also misrepresented that the Civil Authority Additional Coverage in the Policy (along with others) applied only when "access to the described premises is prohibited when there is direct physical damage to other property, not on the described premises, from a covered cause of loss." These statements are not only false, they are incongruous.

   **2.     THE PROMPT PAYMENT OF CLAIMS**

28.     Plaintiff re-alleges the foregoing paragraphs. Liberty Mutual's conduct constitutes and will continue to constitute multiple violations of the Texas Insurance Code, Prompt Payment of Claims. All violations made under this article are made actionable by TEX. INS. CODE §542.060.

29.     Liberty Mutual failed to meet its obligations under the Texas Insurance Code regarding timely beginning an investigation of Plaintiff's claim, and requesting all information reasonably necessary to investigate Plaintiff's claim within the statutorily mandated time of receiving notice

of Plaintiff's claim. Its conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.055.

30. Further, Liberty Mutual failed to accept Plaintiff's full and entire claim within the statutorily-mandated time of receiving all necessary information. Its conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.056.

31. Liberty Mutual failed and will fail to timely pay Plaintiff's claim, and for all of the covered losses due to its wrongful denial of the policy benefits. TEX. INS. CODE §542.057.

32. Liberty Mutual failed and will fail to meet its obligations under the Texas Insurance Code regarding payment of claim without delay due to its wrongful denial. Its conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.058.

33. Because of Liberty Mutual's wrongful acts and omissions, Plaintiff was forced to retain the professional services of the attorney and law firm who is representing it with respect to these causes of action.

**C.    BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING**

34. Plaintiff re-alleges the foregoing paragraphs. Liberty Mutual's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to the insureds pursuant to insurance contracts.

35. From and after the time Plaintiff's loss was presented to Liberty Mutual, its liability to pay the full claim in accordance with the terms of the Policy was reasonably clear. However, it has refused to pay Plaintiff in full and wrongfully denied the claim, despite there being no basis upon which a reasonable insurance company would have relied to deny the full payment. Liberty Mutual's conduct constitutes a breach of the common law duty of good faith and fair dealing.

36. Further, Liberty Mutual's failure, as described above, to adequately and reasonably

investigate and evaluate Plaintiff's claim, although, at that time, it knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

## VII.
## KNOWLEDGE

37. Each of the acts described above, together and singularly, was done "knowingly" by Defendant as that term is used in the Texas Insurance Code and was a producing cause of Plaintiff's damages described herein.

## VIII.
## DAMAGES

38. Plaintiff would show that all of the aforementioned acts, taken together or singularly, constitute the proximate and producing causes of the damages sustained by and will be sustained by Plaintiff.

39. For breach of contract, Plaintiff is entitled to regain the benefit of the bargain, which is the amount of the claims, together with attorney's fees.

40. For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the Policy but for the wrongful denial, court costs, consequential damages not covered by Plaintiff's Policy and attorney's fees. For knowing conduct of the acts described above, Plaintiff asks for three times the actual damages. TEX. INS. CODE §541.152.

41. For noncompliance with the Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of the claim, as well as eighteen (18) percent interest per annum on the amount of such claim as damages, together with attorney's fees. TEX. INS. CODE §542.060.

42. For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to

11

compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, and exemplary damages.

43. For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the attorney whose name is subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorney in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

## IX.

44. In addition, as to any exclusion, condition, or defense pled by Defendant, Plaintiff would show that:

45. The clear and unambiguous language of the policies provides coverage for business interruption and other losses to the Property caused by losses made the basis of Plaintiff's claims;

46. In the alternative, any other construction of the language of the policies are void as against public policy;

47. Any other construction and its use by the Defendant violate the Texas Insurance Code section 541 et. seq. and is void as against public policy;

48. Any other construction is otherwise void as against public policy, illegal, and violates state law and administrative rule and regulation.

49. In the alternative, should the Court find any ambiguity in the policies, the rules of construction of such policies mandate the construction and interpretation urged by Plaintiff;

50. In the alternative, Defendant is judicially, administratively, or equitably estopped from denying Plaintiff's construction of the policies coverage at issue;

51. In the alternative, to the extent that the wording of such policies do not reflect the true intent of all parties thereto, Plaintiff pleads the doctrine of mutual mistake requiring reformation.

**X.**

52. WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendant be cited to appear and answer herein; that, on final hearing, Plaintiff has judgment against Defendant for an amount, deemed to be just and fair by the jury, which will be a sum within the jurisdictional limits of this Court. Plaintiff pleads that the amount in controversy exceeds $75,000.00, excluding interest and costs. Plaintiff further pleads for costs of suit; for interest on the judgment; for pre-judgment interest; and, for such other and further relief, in law or in equity, either general or special, including the non-monetary relief of declaratory judgment against Defendant, to which Plaintiff may be justly entitled.

Respectfully submitted,

By: _____

SHANNON E. LOYD
 "Attorney in Charge"
State Bar No. 24045706
THE LOYD LAW FIRM, P.L.L.C.
12703 Spectrum Drive, Suite 201
San Antonio, Texas 78249
(210) 775-1424
Fax (210) 775-1410
Email: shannon@theloydlawfirm.com

**ATTORNEY FOR PLAINTIFF**

**PLAINTIFF REQUESTS A TRIAL BY JURY**

## **CERTIFICATE OF CONFERENCE**

Plaintiff's counsel conferred with counsel for Defendant Liberty Mutual, and counsel is unopposed to Plaintiff's First Amended Complaint.

_____
SHANNON E. LOYD

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of *Plaintiff's Unopposed First Amended Original Petition* was served on the attorney in charge for Defendant by electronic filing pursuant to the Federal Rules of Civil Procedure, on this 3rd day of June, 2020 to:

    Amy M. Stewart
    State Bar No.: 24060660
    John T. Stone
    State Bar No.: 24098480
    STEWART LAW GROUP, PLLC
    One Arts Plaza
    1722 Routh Street, Suite 745
    Dallas, Texas 75201
    Tel: (469) 607-2300
    Fax: (469) 607-2301
    Email:    astewart@stewartlawgrp.com
                jstone@stewartlawgrp.com

**ATTORNEY-IN-CHARGE FOR DEFENDANT**
**OHIO SECURITY INSURANCE COMPANY**

_____
SHANNON E. LOYD