UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

No. 6:20-cv-00283

**Sultan Hajer d/b/a Rug Outlet,**
*Plaintiff,*

v.

**Ohio Security Insurance Company,**
*Defendant.*

### OPINION AND ORDER

Plaintiff Sultan Hajer brought this action against defendant Ohio Security Insurance Company, raising an insurance dispute stemming from the COVID-19 pandemic. Doc. 6. Defendant moves for judgment dismissing the case for failure to state a legally viable claim. Doc. 21. For the reasons set forth below, that motion is **granted**.

### Background

Plaintiff Sultan Hajer owns and operates a retail business in Tyler, Texas. Doc. 6 at 2. To insure his property, plaintiff purchased a policy from defendant Ohio Security Insurance Company. *Id*. Among other things, the policy "provid[ed] coverage for property, business personal property, business income, extra expense and additional coverages including Civil Authority." *Id*.

Earlier this year, the World Health Organization designated the novel coronavirus, also known as COVID-19, as a pandemic. *Id*. at 3. The COVID-19 pandemic prompted public-health directives from government officials throughout the country, including state and municipal stay-at-home orders. *Id*. As relevant here, Smith County Judge Nathaniel Moran issued a stay-at-home order closing all non-exempt businesses from March 27 to April 10, 2020. *Id*. Texas Governor Greg Abbott likewise shuttered non-exempt businesses across the state from April 2 to April 30, 2020. *Id*.

Because it did not qualify as exempt, plaintiff's business was forced to close its doors while these orders were in place. *Id*. at 4. To recoup his lost profits during this period, plaintiff submitted a claim to defendant under the insurance policy. *Id*. Defendant rejected the claim without investigating, maintaining that the policy did not apply. *Id*.

Plaintiff subsequently filed a lawsuit in the 241st Judicial District of Smith County, Texas, alleging breach of contract, violations of the Texas Insurance Code, and breach of the duty of good faith and fair dealing. Doc. 1. Defendant removed to this court, invoking diversity jurisdiction. *Id*. On September 2, 2020, defendant moves to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 21. However, because defendant filed its motion after its answer (Doc. 13), the court construed defendant's motion as a motion for judgment on the pleadings under Rule 12(c). Doc. 27.

## Standards and analysis

Courts evaluate a motion for judgment on the pleadings by employing "the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2018). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The court construes all well-pleaded facts in the complaint as true, viewing them in the light most favorable to the non-movant. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Courts may consider the complaint, in addition to documents that are "referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Winter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

Under Texas law, insurance policies are read "using the ordinary rules of contract interpretation." *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 831 (Tex. 2009). Policies

are given their "plain, ordinary meaning unless something else in the policy shows the parties intended a different, technical meaning." *Id*. The insured party bears the burden of proving coverage. *JAW The Pointe, LLC, v. Lexington Ins. Co.*, 460 S.W.3d 597, 603 (Tex. 2015). If coverage exists, the burden shifts to the insurer, who must demonstrate that an exclusion applies. *Id*. Finally, to prove liability in the case of an exclusion, the insured must "show that an exception to the exclusion brings the claim back within coverage." *Gilbert Tex. Const., LP v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010).

Having reviewed the facts in the light most favorable to the plaintiff, the court finds that defendant's motion should be granted. According to the complaint, plaintiff is entitled to coverage under two provisions of the parties' insurance policy. Doc. 6 at 4. First, plaintiff's complaint alleges that coverage exists under the policy's business-interruption provision. That provision states in relevant part:

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration'. The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss . . . .

Doc. 6-1 at 49. In other words, to trigger coverage under this provision, the insured party must show that there was a suspension of business stemming from a "direct physical loss of or damage to property." *Id*.

The parties advance markedly different meanings for "physical loss." Plaintiff maintains that, because the language of the provision contains the disjunctive "or," physical loss means something different in kind to physical damage. Doc. 22 at 5. And plaintiff argues that, as the policy itself does not

provide a definition for "direct physical loss," the term is ambiguous, so the court should employ the dictionary definition of each individual word. *Id*. at 5-7. According to plaintiff, this approach would include the plaintiff's "inability to have his Property safely fully operated and occupied." *Id*. at 7.

The court holds, however, that the term "physical loss" is not ambiguous. A provision is not ambiguous merely "because the parties to a lawsuit offer conflicting interpretations of the contract's provisions." *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W. 3d 254, 258 (Tex. 2017). If only one interpretation of a provision is reasonable under the circumstances, the provision is unambiguous. *Id*. Only if the parties identify different, reasonable interpretations is a provision ambiguous and construed in favor of the insured. *Id*.

Here, defendant's reading of the statute is the only reasonable interpretation. The scope of the term "physical loss" is far narrower than plaintiff contends and is only reasonably read in context as meaning "a distinct, demonstrable, physical alteration of the property." *Hartford Ins. Co. v. Miss. Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006) (quoting 10A Couch on Ins. § 148:46 (3d ed. 2005)).

Other Texas district courts interpreting this language have agreed, equating physical loss with tangible damage to property. *See, e.g.*, *Diesel Barbershop, LLC v. State Farm Lloyds*, 2020 WL 4724305, at *5 (W.D. Tex. Aug. 13, 2020) ("It appears that in our Circuit, the loss needs to have been a distinct, demonstrable physical alteration of the property.") (cleaned up); *Ross v. Hartford Lloyd Ins. Co.*, 2019 WL 2929761, at *7 (N.D. Tex. July 4, 2019) (holding that "'physical loss' under the Policy cannot fairly be construed to mean physical loss in the absence of physical damage"). With reference to property, "[t]he language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state—for example, the car was undamaged before the collision dented the bumper."

*Trinity Indus. Inc., v. Ins. Co. of N. Am.*, 916 F.2d 267, 270-71 (5th Cir. 1990).

In *Hartford Insurance Co.*, for instance, a buyer fell victim to a scheme in which its natural-gas supplier fraudulently recirculated natural gas, thereby overcharging the buyer. 181 F. App'x. at 467. The buyer subsequently filed a claim with its insurance company, arguing that it suffered a direct physical loss of its property. *Id*. The Fifth Circuit rejected that argument, holding that no such physical loss occurred because the buyer did not demonstrate a "physical manifestation of loss or damage to the gas itself." *Id*. at 470. Accordingly, the loss suffered was "more accurately described as a loss of money, rather than covered property." *Id*. (cleaned up).

Here too, there is no allegation of a physical loss as interpreted above. Because plaintiff was not operating his business, he suffered financial losses for which he seeks compensation. Doc. 6 at 4. But a monetary loss is not a "distinct, demonstrable, physical alteration of the property." *See Hartford Ins. Co.*, 181 F. App'x at 470. Plaintiff does not plead tangible damage or loss to his store. To be sure, he does characterize his loss in profits as a physical loss by arguing that his store "has been transformed by external events . . . from a sustainable, revenue generating operation to the unsatisfactory state of closure and now slowed business." Doc. 6 at 5. But a regulation prohibiting people from patronizing a business is not a tangible alteration of any property. The regulation causes no changes to the structure of the property, and there is no pleading that the virus itself was present on and altered the property. Absent evidence to the contrary, the business-interruption provision does not apply to the financial losses that plaintiff experienced.

Second, plaintiff alleges that coverage exists under the policy's civil-authority provision. The policy's civil-authority provision applies in the following circumstance:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are no more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Doc. 6-1 at 52. Stated differently, for the civil-authority provision to apply, there must have been (1) damage to a neighboring property within one mile of the insured property; and (2) that damage must have prompted an act of civil authority, either to remedy dangerous physical conditions or to grant a government actor "access to the damaged property." *Id*.

When interpreting similar civil-authority provisions, the Fifth Circuit has held that there should be some nexus between damage to the neighboring property and the cited act of civil authority. *See Dickie Brennan & Co. v. Lexington Ins.*, 636 F.3d 683, 686-87 (5th Cir. 2011). Typically, this nexus requires a cause-and-effect relationship between the two, or a "causal link." *Id.*; *see also S. Tex. Med. Clinics, P.A., v. CAN Financial Corp.*, 2008 WL 450012, at *10 (S.D. Tex. Feb. 15, 2008) ("Requiring . . . a causal link between the prior damage and the action by a civil authority does not rewrite the parties' policy, but rather gives effect to the language it contains.").

In this case, no such causal link is shown from the pleadings, so the civil-authority provision does not apply. Plaintiff appears to advance two theories for why the stay-at-home orders trigger the civil-authority provision. First, plaintiff argues that, because the COVID-19 pandemic has been designated as a "disaster" by multiple sources, "the *threat* of transmission of the virus at any location where people congregate" constitutes the damage to nearby property contemplated by the civil-authority provision. Doc. 22 at 19-20. On plaintiff's view, that threat prompted the stay-at-home orders—the act of civil authority—that prevented plaintiff from accessing his property.

That theory is far too attenuated to show a causal link. Plaintiff has not identified any specific property "within one mile of the insured property" that has suffered damage. As defendant notes, there is no causal link where an act of civil authority is taken in anticipation of an emergency, such as a mandatory hurricane evacuation. *See, e.g.*, *S. Tex. Med. Clinics*, 2008 WL 450012, at *10 (denying civil-authority coverage where an evacuation order "was issued due to the anticipated threat of damage to the county and not due to property damage that had occurred" nearby). The cited acts of civil authority here are not a response to actual damage to adjacent property. Instead, they were taken to mitigate possible harms from an ongoing pandemic.

Second, plaintiff briefly argues that businesses like itself in the surrounding area have suffered damage as a result of the stay-at-home orders. Namely, they "had to physically alter their properties to adhere to subsequent orders by the state." Doc. 22 at 20. But this theory reverses the cause-effect relationship between the act of civil authority and the damage to neighboring property. The provision requires the physical damage to prompt the act of civil authority, not the other way around. Plaintiff's argument for coverage is accordingly unpersuasive. The civil-authority provision does not apply.

At any rate, even if either the business-interruption provision or the civil-authority provision applied, the policy contains a virus exclusion clause that denies coverage if the alleged damage is caused directly or indirectly by a virus. That clause provides, as relevant here:

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area . . . .
>
> (j) Virus or Bacteria
>
> (1) Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

Doc. 6-1 at 62, 64. As defendant notes, the broad language of the virus exclusion covers "any loss where a virus appears in the chain of causation." Doc. 21 at 22. Specifically, the exclusion applies where a virus "directly or indirectly" causes the loss or damage, and it applies "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." Doc. 6-1 at 62, 64.

Here, the COVID-19 pandemic fits neatly "in the chain of causation." According to the complaint, "[t]he proliferation of the virus, consumer fear of the virus, and the stay at home orders have caused Plaintiff physical loss of the property and loss of business income." Doc. 6 at 4-5. By plaintiff's own admission, the virus was in the chain of causation for its losses. Doc. 21 at 22. Even if plaintiff were to allege that the stay-at-home orders, not the pandemic, are the cause of its loss in profits, the ongoing virus pandemic directly prompted those stay-at-home orders.

Plaintiff argues that the virus exclusion clause "applies only where a virus is the fully realized and actual cause of the loss," Doc. 6 at 6-7, so "the exclusion does not apply unless Covid-19 is present at the Property," Doc. 22 at 22. The text of the virus exclusion, however, bears no such limitation. Rather, it applies when the virus is "directly or *indirectly*" responsible for the loss. Doc. 6-1 at 62 (emphasis added). Wherever it falls in the sequence of events, COVID-19 played a significant and substantial role in plaintiff's losses. Accordingly, the virus exclusion applies, and coverage is precluded.

### Conclusion

Because plaintiff's allegations do not show that defendant is liable under the terms of the policy as interpreted here, plaintiff's pending claims cannot succeed. Defendant's motion (Doc. 21) is **granted**, and this action is ordered **dismissed with prejudice**. The clerk of court is **directed** to close the case.

*So ordered by the court on December 7, 2020.*

J. CAMPBELL BARKER
United States District Judge